UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, <br>    PLAINTIFF, <br><br> v. <br><br> BELLSOUTH TELECOMMUNICATIONS, LLC, D/B/A AT&T, <br>    DEFENDANT. | CIVIL ACTION <br> NO. 2:25-CV-137 <br><br> JURY DEMAND |

### COMPLAINT

NATURE OF THE ACTION

This is an action under the Americans with Disabilities Act of 1990 ("ADA") and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of disability and to provide appropriate relief to Carlos "Chuck" Avilas, Jr. ("Mr. Avilas") and to other aggrieved individuals. As alleged with greater particularity below, the Defendant, Bellsouth Telecommunications, LLC, doing business as AT&T ("Defendant" or "AT&T"), utilized a policy that screened out Mr. Avilas, who had successfully performed his services technician job duties with AT&T since 1979, and tended to screen out other aggrieved individuals because of disability. Defendant also reassigned and terminated Mr. Avilas because of disability, and subjected Mr. Avilas to a hostile work environment because of disability.

JURISDICTION & VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 451, § 1331, § 1337, § 1343, and § 1345. This action is authorized and instituted pursuant to the ADA, 42 U.S.C. § 12117(a), which incorporates by reference 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e-5(f)(1) and (3)) and the Civil Rights Act of 1991 (42 U.S.C. § 1981a).

1

2. The employment practices alleged to be unlawful were committed in Louisiana and, therefore, within the jurisdiction and venue of the United States District Court for the Eastern District of Louisiana pursuant to Title VII, 42 U.S.C.§ 2000e-5(f)(3).

### PARTIES

3. Plaintiff, the U.S. Equal Employment Opportunity Commission (the "Commission"), is an agency of the United States of America charged with the administration, interpretation, and enforcement of the ADA and is expressly authorized to bring this action by the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Title VII, 42 U.S.C. § 2000e-5(f)(1).

4. At all relevant times, AT&T has continuously been a Georgia limited liability company doing business in Louisiana and has continuously had at least 15 employees.

5. At all relevant times, AT&T has continuously been an employer engaged in an industry affecting commerce under the ADA, 42 U.S.C.§ 12111(5) and (7).

6. At all relevant times, AT&T has been a covered entity under the ADA, 42 U.S.C. § 12111(2).

### ADMINISTRATIVE PROCEDURES

7. More than 30 days prior to the institution of this action, Mr. Avilas filed a Charge of Discrimination ("Charge") with the Commission alleging violations of the ADA by AT&T.

8. On or about October 14, 2020, the Commission issued to AT&T a Letter of Determination ("LOD") finding reasonable cause to believe that AT&T violated the ADA and inviting AT&T to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

9. The Commission engaged in communications with AT&T to provide the opportunity to remedy the discriminatory practices described in the LOD.

10. On or about November 24, 2020, the Commission issued to AT&T a Notice of Failure of Conciliation advising that the Commission was unable to secure a conciliation agreement acceptable to the Commission.

11. All conditions precedent to the institution of this action have been fulfilled.

### STATEMENT OF CLAIMS

12. Mr. Avilas is a qualified individual with a disability under the ADA, 42 U.S.C. § 12102 and § 12111(8).

    A. Mr. Avilas performed the essential functions of his services technician position since 1979, when his employment with AT&T began, until his involuntary reassignment in 2016.

    B. At all relevant times he was able to perform the essential functions of his position with or without any reasonable accommodation.

    C. Mr. Avilas has impairments—including Class III obesity—that substantially limit one or more major life activities.

    D. Mr. Avilas has a record of an impairments that substantially limit one or more major life activities.

    E. AT&T regarded Mr. Avilas as having a disability by subjecting him to adverse employment actions, described below, because of actual or perceived impairments—including Class III obesity.

13. **Unlawful standards.** Since at least September 1, 2014, AT&T has engaged in unlawful employment practices in violation of the ADA, 42 U.S.C. § 12112(a), (b)(3), and (b)(6), by utilizing standards, criteria, and methods of administration that have the effect of discrimination on the basis of disability and by using qualification standards, employment tests, and other selection criteria that screen out or tend to screen out individuals with disabilities and classes of

individuals with disabilities. Defendant's conduct alleged in this complaint constitutes unlawful disparate treatment and has adversely affected persons on the basis of disability.

    A.    On or about September 1, 2014, AT&T began using an "equipment safe load limits" policy (the "policy").

    B.    The policy provides that "[a]n employee's weight plus clothing, tools and materials may not exceed the manufacturer's safe load limit, i.e., duty rating for equipment used on the job."

    C.    The policy further provides that the "[s]afe load limit, i.e., duty rating, is the maximum weight that a piece of equipment can sustain or support without danger to the equipment or the operator."

    D.    The policy further provides that AT&T will "[a]dvise the affected employees that failure to obtain a weight at or below the safe load limits will result in their removal from the job title . . . ."

    E.    In or about 2008, AT&T began using an "equipment duty ratings" table (the "table"), which lists the "duty rating in pounds" for equipment and which equipment is used in each position.

    F.    At all relevant times, AT&T relied only on the table to determine the applicable duty ratings (safe load limits) for equipment used for each position, and therefore, the applicable weight limit for applicants and employees under its policy.

    G.    The table does not accurately reflect the applicable duty ratings (safe load limits) for each position. For example, the table indicates that services technicians use equipment with duty ratings (safe load limits) of 300 pounds or more even though services technicians, including Mr. Avilas, use equipment with duty ratings (safe load limits) of 350 pounds or more.

H.	Because the table does not accurately reflect the applicable duty ratings (safe load limits) for the equipment used or made available for each position, the policy and the table impose weight limits for applicants and employees that are not job-related and consistent with business necessity.

I.	On or about October 15, 2018, AT&T also began utilizing a "program guide for implementing the [policy]" (the "program guide").

J.	The program guide provides that, "[i]f the certified weight [of an applicant], with work clothes, is above 275 pounds for outside jobs . . . , the applicant will not be hired for that job."

K.	Based on this program guide, AT&T also imposed a 275-pound weight limit for field employees.

L.	Because the program guide does not accurately reflect the applicable duty ratings (safe load limits) for the equipment used for each position, the policy and the program guide impose a 275-pound weight limit for applicants and employees that is not job-related and consistent with business necessity.

M.	Because the program guide does not accurately reflect the actual weight of the tools carried by services technicians, the policy and the program guide imposed a 275-pound weight limit for applicants and employees that is not job-related and consistent with business necessity.

N.	Body mass index ("BMI") is used to diagnose obesity.

O.	A BMI of 40 or greater is considered to be Class III obesity.

P.	A man of average height reaches a BMI of 40 at about 270 pounds and a woman of average height reaches a BMI of 40 at about 230 pounds.

Q. The policy, program guide, and table therefore have the effect of (1) discriminating on the basis of Class III obesity and (2) screening out or tending to screen out individuals who have Class III obesity.

14. **Termination / failure to accommodate.** Since at least January 5, 2016, AT&T has engaged in unlawful employment practices in violation of the ADA, 42 U.S.C. § 12112(a) and (b)(1) by reassigning and terminating Mr. Avilas because of his disability.

A. Mr. Avilas held a services technician position with AT&T from about 1979 to about 2016, when he was involuntarily reassigned and later terminated.

B. At the time of Mr. Avilas's reassignment and termination, the applicable manufacturers' duty ratings (safe load limits) for the primary equipment – ladders – used by services technicians was 375 pounds or more, and the applicable duty ratings for less frequently used / back-up equipment (such as body belts) was 350 pounds or more.

C. Under its policy, program guide, and table, discussed above, AT&T subjected Mr. Avilas to a weight limit of 275 pounds.

D. AT&T weighed Mr. Avilas on or about January 5, 2016, and his weight was about 356 pounds, and he had a BMI of 40 or more.

E. On or about January 18, 2016, AT&T involuntarily reassigned Mr. Avilas from a services technician position to an electronic technician position because his weight was more than 275 pounds.

F. The assignment to electronic technician position, an indoor position based in the Houma Central Office, entailed an unfavorable alteration of the terms, conditions, and privileges of employment, a reduction in responsibilities, and a diminution of prestige. The reassignment limited and segregated Mr. Avilas, adversely affecting his status and employment opportunities.

G. On or about October 3, 2016, Mr. Avilas's doctor informed AT&T that he had been diagnosed with obesity, as well as other impairments.

H. AT&T weighed Mr. Avilas again on or about October 24, 2016, and his weight was about 318 pounds, and he had a BMI of 40 or more.

I. On or about October 24, 2016, Mr. Avilas's weight was within the applicable manufacturers' duty ratings (safe load limits) for the equipment available to services technicians to use, including the equipment that Mr. Avilas personally used to perform his job duties.

J. On or about October 24, 2016, Mr. Avilas requested that he be placed back into his services technician position because his weight was within the applicable manufacturers' duty ratings (safe load limits) for the equipment that he used to perform his services technician duties.

K. On or about October 24, 2016, AT&T noted that Mr. Avilas was "STILL OVE[R]WEIGHT" and that "HE HAS NOT LOS[T] DOWN TO 275LBS." As a result, AT&T kept him involuntarily reassigned to the electronic technician position.

L. On or about December 22 and 26, 2016, Mr. Avilas provided AT&T with documentation that the manufacturers' duty ratings (safe load limits) for the equipment he personally used to perform his services technician duties had duty ratings of 350 pounds or more. AT&T still refused to allow Mr. Avilas to return to his services technician position.

M. AT&T weighed Mr. Avilas again on or about August 7, 2017, and his weight was about 332 pounds, and he had a BMI was 40 or more.

N.   Mr. Avilas's weight on August 7, 2017, was within the applicable manufacturers' duty ratings (safe load limits) for the equipment he personally used to perform his services technician duties.

O.   AT&T noted that Mr. Avilas "went to get weigh[ed] on Monday 08/07/2017 he got weigh[ed] in at 332lbs . . . " but determined he must remain on involuntary reassignment because he was subject to the 275-pound limit.

P.   On or about February 28, 2018, AT&T notified Mr. Avilas that he would be discharged because he had not met the 275-pound limit.

Q.   On or about February 28, 2018, and at the time of his discharge from AT&T, Mr. Avilas's weight was within the applicable manufacturers' duty ratings (safe load limits) for the equipment used by services technicians, including the equipment he personally used every day to perform his services technician duties.

R.   In applying its policy, program guide, and table, AT&T subjected Mr. Avilas to adverse actions.

   i. AT&T reassigned Mr. Avilas to a lesser position when his weight was less than the applicable manufacturers' duty ratings (safe load limits) for equipment he used as a services technician.

   ii. AT&T kept Mr. Avilas on reassignment and refused to return him to his services technician position when his weight was less than the applicable manufacturers' duty ratings (safe load limits) for equipment he used as a services technician.

   iii. AT&T terminated Mr. Avilas when his weight was less than the applicable manufacturers' duty ratings (safe load limits) for equipment he used as a services technician.

      S.      As noted, Mr. Avilas was able at all times, with or without accommodation, to perform the essential functions of the service technician position.

      T.      If Mr. Avilas had needed an accommodation of his disability to allow him to remain employed, AT&T could have reasonably accommodated Mr. Avilas .

      U.      Defendant perceived Mr. Avilas, because of his obesity, to pose a direct threat to himself or others.

      V.      Defendant did not conduct an individualized assessment of whether Mr. Avilas posed a direct threat to himself or others.

      W.      If Mr. Avilas posed, or was believed to pose, a direct threat to himself or others, such threat could have been reduced or eliminated through reasonable accommodation.

      X.      Defendant did not make any effort to reasonably accommodate any direct threat which it perceived Mr. Avilas to pose, and Defendant failed to engage in an interactive process regarding such accommodation. But for this failure by Defendant, Mr. Avilas would not have been terminated.

      Y.      Defendant terminated Mr. Avilas because of his disability, Class III obesity.

15.      **Harassment / Hostile Work Environment.** Since at least January 5, 2016, AT&T engaged in unlawful employment practices in violation of the ADA, 42 U.S.C. § 12112(a) and (b)(1) by subjecting Mr. Avilas to a hostile work environment because of his disability.

      A.      One or more AT&T employees wrote "Think safety, [d]on't get fat (like Chuck [Avilas]" on the wall of a meeting room, and AT&T supervisors, who regularly conducted meetings in the room, did not remove it. The graffiti remained in place for over a year.

  B. One or more AT&T employees hung a three-foot belt on the wall of a meeting room with a sign that said "Chuck [Avilas]'s Sasquatch[ ] belt to hold up his Sasquatch pants." The belt and sign remained in place for over a year.

  C. The harassment alleged herein was related to disability as it referenced Mr. Avilas's Class III obesity.

  D. The harassment was objectively and subjectively severe or pervasive.

  E. Mr. Avilas was humiliated by the harassment, and it was unwelcome.

  F. Defendant knew or should have known of the harassment alleged herein and failed to take legally sufficient prompt, remedial action in response.

  G. Defendant ratified the harassment alleged herein by, including but not limited to, the fact that one or more supervisors saw the harassment occur and did not take action to remediate it.

  H. Given that Defendant was aware of and ratified the harassment alleged herein, it would have been a futile act for Mr. Avilas to complain about it, he was reasonable to refrain from complaining, and he was not legally obligated to do so.

  I. The hostile work environment to which Defendant subjected Mr. Avilas because of his disability altered the terms and conditions of his employment, including causing him to experience embarrassment and degradation daily for more than a year, in violation of the ADA.

16. The effect of AT&T's unlawful employment practices complained of above has been to deprive Mr. Avilas and other aggrieved individuals of equal employment opportunities and otherwise adversely affect their status as employees because of disability in violation of the ADA.

17. Defendant's conduct alleged herein caused Mr. Avilas — and all other persons adversely affected by such conduct — to suffer compensable harm, including but not limited to lost wages, lost benefits, pecuniary compensatory damages, and non-pecuniary compensatory damages.

18. The unlawful employment practices complained of above were intentional.

19. AT&T acted with malice and/or reckless indifference to the federally protected rights of Mr. Avilas and other aggrieved individuals when it engaged in the unlawful employment practices complained of above.

**PRAYER FOR RELIEF**

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining AT&T its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from discriminating against its applicants or employees on the basis of disability.

B. Order AT&T to institute and carry out policies, practices, and programs which provide equal employment opportunities for qualified individuals with disabilities, and which eradicate the effects of its past and present unlawful employment practices.

C. Order AT&T to make whole Mr. Avilas and other aggrieved individuals, by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to reinstatement and/or front pay.

D. Order AT&T to post and keep posted the notices required by the ADA, 42 U.S.C. § 12115, which incorporates by reference Title VII, 42 U.S.C. § 2000e-10(a).

E. Order AT&T to make and preserve all records relevant to the determination of whether unlawful employment practices have been or are being committed, in

accordance with the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Title VII, 42 U.S.C. § 2000e-8(c).

  F. Order AT&T to make whole Mr. Avilas and other aggrieved individuals by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, including job-search and medical expenses, in amounts to be determined at trial.

  G. Order AT&T to make whole Mr. Avilas and other aggrieved individuals by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of above, including emotional pain and suffering, inconvenience, and humiliation, in amounts to be determined at trial.

  H. Order AT&T to pay punitive damages for its malicious and/or reckless conduct, as described above, in amounts to be determined at trial.

  I. Grant such further relief as the Court deems necessary and proper in the public interest.

  J. Award the Commission its costs of this action.

### JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by this Complaint that are triable to a jury.

Respectfully submitted,

**Karla Gilbride**
General Counsel

**Christopher Lage**
Deputy General Counsel

**Gwendolyn Young Reams**
Associate General Counsel

**Rudy L. Sustaita**
Regional Attorney

**Gregory T. Juge**
Assistant Regional Attorney


 /s/ *Peter Theis*
**Peter Theis**
Trial Attorney
U.S. Equal Employment Opportunity Commission
New Orleans Field Office
Hale Boggs Federal Building
500 Poydras Street, Suite 809
New Orleans, LA 70130
Phone: (504) 635-2548
Louisiana Bar No. 34786

**Scott D. Wilson**
Senior Trial Attorney
U.S. Equal Employment Opportunity Commission
New Orleans Field Office
500 Poydras Street, Suite 809
New Orleans, LA 70130
Phone: (504) 635-2569
Email: scott.wilson@eeoc.gov
Louisiana Bar No. 19835

**Elizabeth J. Owen**
Senior Trial Attorney
U.S. Equal Employment Opportunity Commission
New Orleans Field Office
500 Poydras Street, Suite 809
New Orleans, LA 70130
Phone: (504) 635-2535
Email: elizabeth.owen@eeoc.gov
Louisiana Bar No. 33620

**Jacqueline C. Barber**
Senior Trial Attorney
U.S. Equal Employment Opportunity

                        Commission
                        New Orleans Field Office
                        500 Poydras Street, Suite 809
                        New Orleans, LA 70130
                        Phone: 504.635.2572
                        Email: jacqueline.barber@eeoc.gov
                        Louisiana Bar No. 36362

                        **COUNSEL FOR U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**REGISTERED AGENT FOR SERVICE OF PROCESS:**

CT Corporation System
3867 Plaza Tower Dr.
Baton Rouge, LA 70816