## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, PLAINTIFF, | CIVIL ACTION No. 2:25-CV-137 |
| v. | JUDGE GREG GERARD GUIDRY |
| BELLSOUTH TELECOMMUNICATIONS, LLC, D/B/A AT&T, DEFENDANT. | MAGISTRATE JUDGE MICHAEL NORTH |

## EEOC'S OPPOSITION TO DEFENDANT'S
## MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

## INTRODUCTION

This case centers on the impairment of Class III obesity, sometimes referred to as "severe" or "morbid" obesity, defined as having a Body Mass Index (BMI) of 40 or greater. Only about 9% of Americans suffer from this impairment. Since at least 2018, Defendant has used an unlawful standard which discriminates against persons who weigh 275 pounds or more. Complaint, R. Doc. 1, ¶ 13. This standard unlawfully discriminates or tends to discriminate against persons with disabilities, *viz*., Class III obesity, in violation of the ADA. Defendant's unlawful conduct has harmed a group of aggrieved individuals. *Id*., ¶ 16.

Defendant's instant motion is based on two fundamental, and incorrect, arguments: (1) that obesity is not an impairment under the ADA; and (2) that because the EEOC did not plead substantial limitation of a specified major life activity, 12(b)(6) dismissal is proper.[1]

The former argument fails for numerous reasons. Defendant attempts to rewrite the plain language of an EEOC regulation, arguing that "obesity standing alone is a physical characteristic, not an impairment protected by the ADA" and must "be the result of a physiological disorder" to be protected. R. Doc. 9-1 at 3, 5. The EEOC regulation says no such thing. As this Court has held:

> A careful reading of the EEOC guidelines and the ADA reveals that the requirement for a **physiological cause is only required when a charging party's weight is within the normal range**. 29 C.F.R. § 1630.2(h). However, if a charging party's weight is outside the normal range-that is, if the charging party is severely obese-**there is no explicit requirement that obesity be based on a physiological impairment**.

---

[1] Defendant suggests that the EEOC has pleaded a "disparate impact" claim. R. Doc. 9-1 at 1, 3. However, there is no such allegation, and those words do not appear, in the complaint. To the contrary, EEOC expressly pled that Defendant's conduct "constitutes unlawful disparate treatment" and that such conduct was "intentional." Complaint, R. Doc. 1 at ¶¶ 13, 18. In any event, the EEOC disavows any intention to seek disparate impact liability in this case.

*EEOC v. Res. for Human Dev., Inc*. 827 F. Supp. 2d 688, 694 (E.D. La. 2011) (Lemelle, J.) (emphasis added).  Mr. Avilas's weight is not within the normal range, as Defendant must concede, and this Court must accept as true, based on the well pleaded facts.  *See* Complaint, ¶¶ 13, 14.

The second flaw in Defendant's initial argument is that — even if a physiological cause were required for obesity to be an impairment — the EEOC's pleadings are not deficient and would allow for such a finding at trial.  The EEOC's pleading that Mr. Avilas and other similarly aggrieved individuals are persons with a disability (Class III obesity) satisfies Fed. R. Civ. P. 8.  There is no requirement that the EEOC plead every factual issue that may arise in support of its well pleaded claims.  *See Swierkiewicz v. Sorema N.A*., 534 U.S. 506 (2002).  The EEOC is unaware of a single case in which an obesity claim was dismissed at the 12(b)(6) stage for failing to plead underlying physiological cause.  Because the EEOC has pleaded its facts satisfactorily under Rule 8, it is entitled to conduct discovery to support and prove its claims at trial.

As for the Defendant's belief that the complaint needs to allege additional facts supporting that the impairment substantially limits a major life activity, Defendant misreads the "short and plain statement" language of Rule 8.  The EEOC has well pleaded that Mr. Avilas has an impairment which substantially limits one or more major life activity.  There is no requirement under Rule 8 that a party identify the particular major life activities at the pleading stage.  Moreover, the EEOC also pleaded "regarded as" disability, which requires no such showing of a substantially limited major life activity.[2]

---

[2]    Importantly, parties are not required to plead theories to satisfy Rule 8. "[I]t is unnecessary to set out a legal theory for the plaintiff's claim for relief." *Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014) (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1219, at 277-78 (3rd ed. 2004)).  The EEOC may prove its disability claim at trial based on a "regarded as" theory, an "actual" theory, and/or a "record of" theory.  Theories are not claims, and they need not be pleaded; therefore, theories cannot be dismissed under Rule 12(b)(6).

Finally, if there were any deficiencies in the EEOC's pleadings, the appropriate remedy would be to dismiss the complaint without prejudice, to allow the EEOC to amend its complaint. Dismissal with prejudice is not appropriate in these circumstances. Defendant has been put on notice by the well pleaded complaint of the nature of the claims against it. The motion should be denied.

## SUMMARY OF FACTS

Since at least 2018, Defendant Bellsouth Telecommunications, LLC (doing business as AT&T) has enforced a 275-pound weight restriction for applicants and employees in field positions. R. Doc. 1 (Complaint) at 3 (¶ 13.A-K).[3] The weight restriction, implemented for safe equipment use, does not accurately reflect the safety ratings of the equipment used by services technicians. *Id.* at 3 (¶ 13.K-M). The application of the restriction constitutes disparate treatment and has the effect of discriminating on the basis of Class III obesity and screening out or tending to screen out individuals who have Class III obesity. *Id.* at 4 (¶ 13.N-Q). The EEOC's complaint seeks relief on behalf of Mr. Carlos "Chuck" Avilas, Jr., who filed a charge of discrimination with the EEOC, and a class of aggrieved individuals who were subject to adverse action by application of the weight restriction policy. R. Doc. 1 at 1 ("Nature of the Action") ("This is an action under the Americans with Disabilities Act of 1990 ('ADA') and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of disability and to provide appropriate relief to Carlos 'Chuck' Avilas, Jr. ('Mr. Avilas') and to other aggrieved individuals."); p. 6 ("Statement of Claims") at ¶ 13.Q ("The policy, program guide, and table therefore have the effect of (1) discriminating on the basis of Class III obesity and (2) screening out or tending to screen

---

[3]      In order to prevail on a motion to dismiss under Rule 12(b)(6), a defendant must overcome the well pleaded facts in the complaint. The EEOC incorporates herein by reference all facts pleaded in its complaint.

out individuals who have Class III obesity.") and ¶ 16 ("The effect of AT&T's unlawful employment practices complained of above has been to deprive Mr. Avilas and other aggrieved individuals of equal employment opportunities and otherwise adversely affect their status as employees because of disability in violation of the ADA."); p. 11-12 ("Prayer for Relief") at ¶¶ C, F, and G.

Mr. Avilas worked for Defendant as a services technician since 1979.  R. Doc. 1 at 2 (¶ 12.A).  Mr. Avilas developed Class III obesity during his employment and was always able to perform the essential functions of his position.  *Id.* at 3 (¶ 12.A-D).   Mr. Avilas has impairments, including Class III obesity, and a record of impairments that substantially limit one or more life activities.  *Id.* at 3 (¶ 12.C-D).  Defendant was made aware, through Mr. Avilas' doctor, that Mr. Avilas was diagnosed with obesity and other impairments.  *Id.* at 7 (¶ 14.G).  Defendant reassigned and eventually discharged Mr. Avilas because his Class III obesity disqualified him under the 275-pound weight restriction policy implemented by Defendant.  *Id.* at 3-4 (¶ 12.E, ¶ 14.D-R).   While he was reassigned, Mr. Avilas was harassed based on his Class III obesity.  *Id.* at 9-10 (¶ 15.A-I).

## ARGUMENT

### I.    Rule 12(b)(6) Legal Standard.

"[A] Fed. R .Civ. P. 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted is viewed with disfavor and should rarely be granted." *Beanal v. Freeport–McMoran, Inc.*, 197 F.3d 161, 164 (5th Cir. 1999). All well pleaded facts in the complaint must be accepted as true for purposes of a 12(b)(6) motion. *See, e.g., Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508, n. 1 (2002), citing *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 164 (1993); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S., 544, 555-56 (2007).

Under Federal Rule of Civil Procedure 8, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Such a statement "give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Complaints that provide such notice should "unlock the doors" to discovery. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To provide such "notice" of the claim to the defendant, and to survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter which, when "taken as true," states "a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 556, 570. "[D]etailed factual allegations" are not required at the pleading stage. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555 (same). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Asking for plausible grounds to infer [unlawful conduct] does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [such conduct]." *Twombly*, 550 U.S. at 556. Therefore, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Id.* (citation and quotation marks omitted). A defendant should not "confuse[] the pleading requirement under Rule 8(a) and *Swierkiewicz v. Sorema* with plaintiff's obligation to introduce evidence to prove her claims in opposition to a properly supported motion for summary judgment or at trial. Plaintiff does not have an obligation to present evidence or proof of her claim in her complaint." *Jimison v. State of La. Dept. of Educ. Spec. Sch. Dist., No*. 07-370, 2008 U.S. Dist. LEXIS 123179, *5 (M.D. La. July 29, 2008).

II.    **The EEOC Has Met Its Pleading Requirements.**

A.    **Even were Class III obesity to require an underlying physiological condition to qualify as an impairment, the motion fails.**

Defendant argues that "obesity alone is not a physical impairment" within the meaning of the statute and implementing regulations, as obesity "must be the result of a physiological disorder to qualify for protection under the ADA" R. Doc. 9-1 at 3, 5. Defendant relies on its assertion that "obesity alone is not an impairment" to support its contentions that the EEOC failed to plead actual disability (section II of Defendant's Brief, R. Doc. 9-1 at 4-8), regarded-as disability (Section III, *id.* at 8-10), and a record of disability (Section IV, *id.*, at 10). For reasons discussed in the next section, this assertion is wrong and has been rejected by this Court. But reaching the issue is unnecessary to resolve the Defendant's motion.

Even were Defendant's assertion that obesity requires an underlying physiological condition true, the motion must fail. The complaint does not allege any facts about whether Mr. Avilas' Class III obesity has an underlying cause. The EEOC is not required to allege that level of factual specificity regarding the nature of the impairment. *See, e.g., Lowe v. Am. Eurocopter, LLC*, No. 1:10CV24-A-D, 2010 U.S. Dist. LEXIS 133343, at *25-26 (N.D. Miss. Dec. 16, 2010) (allegation that plaintiff was disabled due to her weight was sufficient to survive Rule 12(b)(6) motion to dismiss her ADA claim, rejecting defendant's claim "that obesity is not a disabling impairment" within the meaning of the ADA); *Melson v. Chetofield*, No. 08-3683, 2009 U.S. Dist. LEXIS 19025, at *8 (E.D. La. Mar. 4, 2009) (plaintiff stated a claim for discrimination under the ADA sufficient to survive Rule 12(b)(6) motion despite failure to identify her impairment, where it was inferable that the impairment was obesity).

Accordingly, the allegations of the complaint are consonant with the EEOC's presenting evidence and establishing, as necessary, that Mr. Avilas's Class III obesity has an underlying

physiological cause.[4]    *See, e.g., Cook v. State of Rhode Island, Dept. Of Mental Health, Retardation, and Hospitals*, 10 F.3d 17, 23 (1st Cir. 1993) (referencing expert testimony that Class III obesity is "a physiological disorder involving a dysfunction of both the metabolic system and the neurological appetite-suppressing signal system, capable of causing adverse effects within the musculoskeletal, respiratory, and cardiovascular systems"); *Greenberg v. Bellsouth Telecomm*., 498 F.3d 1258 (11th Cir. 2007) (finding that plaintiff could establish his obesity was the result of a physiological cause); *see also EEOC v. Watkins Motor Lines, Inc.,* 463 F.3d 436, 443 (6th Cir. 2006) (cited in Defendant's Brief, R. Doc. 9-1 at 5) (noting that "morbid obesity . . . may have a physiological cause" but plaintiff had presented no evidence in opposition to summary judgment motion that the charging party's morbid obesity had a physiological cause or evidence that morbid obesity, "because of the nature of the disorder, always has a physiological cause"); *cf. Lowe*, *supra*, No. 2010 U.S. Dist. LEXIS 133343, at *25-26 ("Whether or not Plaintiff can in fact prove that her weight rises to the level of a disability under the ADA is not at issue here, as a motion to dismiss is not the proper method for evaluating the merits of Plaintiff's specific assertions.").

Accordingly, the Defendant's motion to dismiss the complaint pursuant to Rule 12(b)(6) should be denied.[5]

---

[4]    The EEOC anticipates that discovery will show that Class III obesity does, generally and in Mr. Avilas's case, have underlying physiological causes. The EEOC presented such evidence in the Eastern District litigation EEOC v. Resources for Human Development, Inc. (10-cv-3322).

[5]    Defendant also asserts, with respect to whether the EEOC stated a disability claim based on a record of impairments, that the EEOC failed to "allege facts to show that Avilas advised Bellsouth at any point during his employment of any condition other than his weight." However, the complaint alleges: "On or about October 3, 2016, Mr. Avilas's doctor informed AT&T that he had been diagnosed with obesity, as well as other impairments." R. Doc. 1 at ¶ 14.G.

### B. Class III obesity is an impairment within the meaning of the ADA.

Although the foregoing is a sufficient ground to deny the Defendant's motion to dismiss with respect to any asserted or implied deficiency in alleging "impairment," Defendant is incorrect that Class III obesity "must result from an underlying physiological cause to qualify for protection under the ADA." R. Doc. 9-1 at 5. This Court squarely rejected this argument — at the summary judgment stage, which is far more demanding that the 12(b)(6) stage — in *Res. for Human Dev., supra*, 827 F. Supp. 2d 688, 693-95 (E.D. La. 2011); *see also McCollum v. Livingston,* No. 4:14-CV-3253, 2017 U.S. Dist. LEXIS 19602, at *18 (S.D. Tex. Feb. 3, 2017)  (at the summary judgment stage, "the Court concludes that a reasonable jury could find that McCollum was a qualified individual under the ADA based solely on morbid obesity").  Moreover, this Court in *Resources for Human Development, Inc.* specifically rejected each argument that Defendant now presents. Defendant offers no new basis, for purposes of a motion to dismiss under Fed. R. Civ. P. 12(b)(6), for disregarding the decision.[6]

Congress passed the ADA to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101 (b)(1). The statute prohibits employers from discriminating against "a qualified individual on the basis of disability" in many circumstances. *Id.* § 12112(a). The Act defines "disability" to include (1) a "physical or mental impairment that substantially limits one or more major life activities," and (2) "being regarded as having such an impairment." *Id.* § 12102(1), (2)(A).

---

[6]    The Fifth Circuit has not held that a physiological cause is required for obesity to be covered as physical impairment. *See Lumar v. Monsanto Co.*, 795 F. App'x 293, 294 (5th Cir. 2020) (assuming, without deciding, that plaintiff's obesity is an impairment).

In 2008, Congress amended the ADA to correct what it considered to be an unduly narrow interpretation of the word "disability," emphasizing that the "definition of disability shall be construed in favor of broad coverage . . . , to the maximum extent permitted by the terms of [the statute]." *Id.* § 12102(4)(A).  As the Fifth Circuit observed:

> In crafting the ADAAA, Congress intended "that the primary object of attention in cases brought under the ADA should be whether entities covered under the ADA have complied with their obligations [ ] and . . . **that the question of whether an individual's impairment is a disability under the ADA should not demand extensive analysis."**

*Neely v. PSEG Tex., Ltd. P'ship*, 735 F.3d 242, 245 (5th Cir. 2013) (emphasis added) (quoting Pub. L. No. 110-325, § 2(b)(5), 122 Stat. 3553 (Sept. 25, 2008) (codified at 42 U.S.C. § 12201 (Note)).  The amendments also expressly added "major bodily functions" to the ADA's list of major life activities.  *Garner v. Chevron Phillips Chem. Co.*, L.P., 834 F. Supp. 2d 528, 538 (S.D. Tex. 2011) (citing ADA Amendments Act of 2008, Pub. L. No. 110-325, Sec. 4, § 3(2)(A) and (B), 122 Stat. 3553, 3555).

Although the statute does not define the term "physical . . . impairment," Defendant correctly observes (R. Doc. 9-1 at 4) that the EEOC has promulgated regulations that define that term to mean "any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems, such as . . . musculoskeletal, . . . cardiovascular, . . . digestive, . . . circulatory, . . . and endocrine." 29 C.F.R. § 1630.2 (h)(1); *cf.* 42 U.S.C. § 12116  (authorizing EEOC to issue regulations interpreting the ADA).  The term "physiological" means "relating to the way in which the bodies of living things work."  Physiological, *Cambridge Dictionary*, https://dictionary.cambridge.org/us/dictionary/english/physiological (last visited May 13, 2025).

As noted, Class III obesity is a condition of having a BMI of 40 or greater.  *See The Merck Manual of Diagnosis & Therapy* 59 tbl. 6-2 (Robert S. Porter, MD., ed., 19th ed. 2011) – Class III obesity is plainly "physiological" in nature, and it is also a "disorder or condition" that "affect[s]

one or more body systems." 29 C.F.R. § 1630.2 (h)(1); *see, e.g., Stedman's Medical Dictionary* (26th ed. 1995), at 1235 (defining "morbid obesity" as obesity "sufficient to prevent normal activity or physiologic function"); 2013 Resolution by the AMA House of Delegates Recognizing Obesity As A Disease, available at https://studyres.com/doc/913973/american-medical-association-house-of; *see* https://www.ama-assn.org/sites/default/files/media-browser/public/hod/a13-resolutions_0.pdf (page 461) (citing "an overabundance of clinical evidence to identify obesity as a multi-metabolic and hormonal disease state including impaired functioning of appetite dysregulation, . . . endocrine dysfunction including elevated leptin levels and insulin resistance, . . . dysregulated adipokine signaling, . . . blood pressure elevation, . . . dyslipidemia, and systemic and adipose tissue inflammation"); *see also* C*ook v. State of Rhode Island, Department of Mental Health, Retardation, and Hospitals*, 10 F.3d 17, 23-24 (1st Cir. 1993) (in interpreting materially identical provisions of sec. 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794) and enabling regulations, holding that a jury could have found Class III obesity to be an "impairment" in light of expert testimony that "morbid obesity is a physiological disorder involving a dysfunction of both the metabolic system and the neurological appetite suppressing signal system, capable of causing adverse effects within the musculoskeletal, respiratory, and cardiovascular systems").[7]

---

[7]    Other U.S. agencies concur that obesity is a disease, *i.e.*, a medical condition affecting one or more body systems. The National Institutes of Health has published guidelines stating that "[o]besity is a complex multifactorial chronic disease;" the Food and Drug Administration has recognized obesity as a disease; the Internal Revenue Service issued a revenue ruling explaining that "[o]besity is medically accepted to be a disease in its own right" and concluding that certain expenses for obesity treatment would qualify as deductible medical expenses; and the Social Security Administration determined that obesity is a "complex, chronic disease" that can under certain circumstances, standing alone, qualify as a severe impairment for purposes of evaluating Social Security disability claims. See, respectively, NIH Clinical Guidelines on the Identification, Evaluation, and Treatment of Overweight and Obesity in Adults:

Defendant is therefore wrong that obesity — more so than any other ADA impairment — "must be the result of a physiological disorder to qualify for protection under the ADA." R. Doc. 9-1 at 5. *Cf.* H.R. Rep. No. 101-485(III) at 29 (1990), as reprinted in 1990 U.S.C.C.A.N. 267, 452 (House Committee Report, explaining that "[t]he cause of a disability is always irrelevant to the determination of disability").[8]  Courts have not imposed a causation requirement on other impairments, such as migraine headaches. *See, e.g., Huber v. Blue Cross & Blue Shield of Fla., Inc.*, No. 20-3059, 2021 U.S. Dist. LEXIS 49977, at *7-8 (E.D. La. Mar. 17, 2021) (plaintiff alleging that she is disabled due to migraines stated a claim for relief under the ADA sufficient to defeat Rule 12(b)(6) motion).  Nor have courts imposed a causation requirement on other impairments that may be exacerbated by voluntary conduct.  To the contrary, the protection of the ADA "indisputably applies to numerous conditions that may be caused by voluntary conduct, such as alcoholism, AIDS, diabetes, cancer resulting from cigarette smoking, heart disease resulting from excess of various types, and the like." *Res. for Human Dev., supra*, 827 F. Supp. 2d at 694 (quoting *Andrews v. Ohio*, 104 F.3d 803, 809 (6th Cir. 1997)).  "[T]o require establishment of the underlying cause of the impairment in a morbid obesity [case], but not in any other disability cases,

_____

The Evidence Report xi (1998), available at https://www.ncbi.nlm.nih.gov/books/NBK2003/pdf/Bookshelf_NBK2003.pdf; FDA Regulations on Statements Made for Dietary Supplements Concerning the Effect of the Product on the Structure or Function of the Body, 65 Fed. Reg. 1000, 1027 (Jan. 6, 2000); I.R.S. Rev. Rul. 2002-19, at 3-4, available at https://www.irs.gov/pub/irs-drop/rr-02-19.pdf; SSR 02-01p § C(1), (5), (6), SSR 02-1p, 2002 SSR LEXIS 1 (Sept. 12, 2002).

    [8]    The EEOC regulations adopted the definition of impairment found in regulations promulgated by the Department of Education implementing Section 504 of the Rehabilitation Act. See 29 C.F.R. pt. 1630 app. § 1630.2(h).  The appendix to these Department of Education regulations provides that there is no causation requirement.  The appendix defines an "impairment" to include "any condition which is mental or physical but whose precise nature is not at present known." 34 C.F.R. pt. 104 app. A (emphasis added).

would epitomize the very prejudices and stereotypes which the ADA was passed to address." *Id.* (quoting the EEOC's brief). Indeed, Defendant's entire premise necessarily rests on the offensive, stereotyped notion that people are obese because of their own failings. The ADA was enacted to remedy employment decisions based on such myths and stereotypes. 42 U.S.C. § 12101(a) ("The Congress finds that—(1) physical or mental disabilities in no way diminish a person's right to fully participate in all aspects of society, yet many people with physical or mental disabilities have been precluded from doing so because of discrimination; others who . . . are regarded as having a disability also have been subjected to discrimination[.]"); *Campbell v. Universal City Dev. Partners, LTD*, 72 F.4th 1245, 1259 (11th Cir. 2023) ("Congress enacted the ADA to address disability discrimination based on stereotypes about disability.") (citing § 12101(a)); *see also EEOC v. Tex. Bus Lines*, 923 F. Supp. 965, 975, 979 (S.D. Tex. 1996) (granting summary judgment to EEOC on disability discrimination where evidence showed that defendant discharged employee because of "myths and stereotypes" regarding obesity).

The foregoing forecloses Defendant's argument. Yet Defendant seeks to use the EEOC's interpretive guidance 29 C.F.R. pt. 1630, app. § 1630.2(h) to support a contrary interpretation, misleadingly replacing the word "weight" with "obesity standing alone" when citing the applicable regulations. R. Doc. 9-1 at 4 ("obesity standing alone is a physical characteristic, not an impairment protected by the ADA"). This Court rejected this same argument, and mistaken reading, in *Resources for Human Development, Inc.*

The guidance explains that the term "impairment" "does not include physical characteristics such as eye color, hair color, left-handedness, or height, weight, or muscle tone that are within 'normal' range and are not the result of a physiological disorder." 29 C.F.R. pt. 1630, app. § 1630.2(h). Defendant cites out-of-circuit decisions concluding that this guidance means

that "weight is generally a physical characteristic that qualifies as a physical impairment only if it falls outside the normal range *and* it occurs as the result of a physiological disorder." R. Doc. 9-1 at 5-6 (emphasis in original). This interpretation of EEOC's guidance requires an incorrect replacement of the word "and" with the word "or." As explained by Judge Lemelle:

> A careful reading of the EEOC guidelines and the ADA reveals that the requirement for a physiological cause is **only required when a charging party's weight is within the normal range**. 29 C.F.R. § 1630.2(h). However, if a charging party's weight is outside the normal range-that is, if the charging party is severely obese-there is no explicit requirement that obesity be based on a physiological impairment.

*Res. for Human Dev., supra*, 827 F. Supp. 2d at 694 (emphasis added). Contrary to Defendant's assertion that the Court "relied on guidance [the EEOC's Compliance Manual] that is now outdated," the Court based its interpretation on "[a] careful reading of the EEOC guidelines [i.e., 29 C.F.R. § 1630.2 (h)(1) and 29 C.F.R. pt. 1630, app. § 1630.2(h)] and the ADA." *Id.*[9]

Ultimately, the text of the statute itself determines what constitutes an impairment. Any doubt about whether Class III obesity constitutes an "impairment" is resolved by Congress's directive that the term "disability" "shall be construed in favor of broad coverage . . . , to the

---

[9]     The EEOC's Compliance Manual is an agency document created and maintained for internal use by the EEOC's investigators. The Court cited and quoted Section 902 as supportive of the correct interpretation stemming from the statute and guidelines. *Id.* at 694 ( "[B]eing overweight, in and of itself, is not generally an impairment . . . On the other hand, severe obesity, which has been defined as body weight more than 100% over the norm, is clearly an impairment."). After the 2008 passage of the amendments to the ADA, the EEOC, without rescission, removed from its website Section 902 of its Compliance Manual, which covered the definition of "disability," because the amendments superseded some the section's analysis. www.eeoc.gov/section-902-definition-term-disability (last visited May 9, 2025).

     Pertinently, the 2008 amendments *expanded* the definition of disability and coverage of the Act, as discussed *infra*, so as to include more individuals within the Act's protections. Thus, the Compliance Manual analysis which Judge Lemelle cited remains instructive and is, indeed, more persuasive now — because the 2008 amendments expanded the definition of disability beyond that which Judge Lemelle had to apply.

maximum extent permitted by the terms of [the statute]." 42 U.S.C. § 12102 (4)(A); *Neely, supra*, 735 F.3d at 245 (5th Cir. 2013) ("Congress intended 'that the primary object of attention in cases brought under the ADA should be whether entities covered under the ADA have complied with their obligations[ ] and . . . **t**hat the question of whether an individual's impairment is a disability under the ADA should not demand extensive analysis.'") (quoting Pub. L. No. 110-325, § 2(b)(5), 122 Stat. 3553 (Sept. 25, 2008) (codified at 42 U.S.C. § 12201 (Note)). In *Cannon v. Jacobs Field Servs. N. Am.*, 813 F.3d 586, 590 (5th Cir. 2015), the Fifth Circuit, noting that the 2008 amendments broadened the definition of disability, determined that a plaintiff's rotator cuff injury (an injury that can be caused by imprudent exertion) qualified as an impairment that substantially limits a major life activity under the Act.  Congress's directive that the definition of disability "shall be construed in favor of broad coverage" supports that Class III obesity – a recognized and defined medical condition with a more severe effect on an array of bodily systems than a shoulder injury – is an impairment.  *Cf. Garner, supra,* 834 F. Supp. 2d. at 538 (noting that Congress's 2008 amendments expressly added "major bodily functions" to the ADA's list of major life activities). Imposing a unique, extra-statutory causation requirement on the condition is not consistent with the statutory directive.  For this reason, "neither the EEOC nor the Fifth Circuit have ever required a disabled party to prove the underlying basis of their impairment."  *Res. for Human Dev., supra*, 827 F. Supp. 2d at 694.

In sum, Class III obesity does not require an underlying physiological disorder to be an impairment.  Accordingly, the complaint states a claim for relief under the ADA by alleging Class

III obesity as an impairment (regardless of an underlying physiological disorder, *vel non*), and the Defendant's motion to dismiss on this ground should be denied.[10]

### C.  The EEOC otherwise adequately pleaded disability.

Defendant lastly argues that the complaint "failed to state a claim because it did not allege facts to show Avilas' obesity substantially limited him in any major life activities." R. Doc. 9-1 at 10.  This ground also fails.

Courts have held that "an ADA plaintiff, at the pleading stage, is not required to explicitly assert a substantially limited major life activity." *EEOC v. Northwest Airlines*, 216 F. Supp. 2d 935, 939 (D. Min. 2002); *see also EEOC v. J.H. Routh Packing Co.*, 246 F.3d 850, 854 (6th Cir. 2001) ("[S]o long as the complaint notifies the defendant of the claimed impairment, the substantially limited major life activity need not be specifically identified in the pleading."); *Rohn v. Homer*, 367 F. Supp. 2d 1278, 1283 (N.D. Cal. 2005) (plaintiff who pleads an impairment with clarity need not explicitly identify a "substantially limit[ed] . . . major life activity" to survive a motion for judgment on the pleadings);  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir.

---

[10]    This applies equally to Defendant's argument that the complaint failed to allege disability under the "regarded as" prong of the statute's definition of disability.  R. Doc. 9-1 at 8-10 (asserting that the complaint should be dismissed because it  "alleges only that Bellsourth regarded [Mr. Avilas] as disabled because of his weight, not because of any physiological weight-related disorder").   Surprisingly, Defendant relies on the Second Circuit's decision — pre-ADAAA — in *Francis v. City of Meriden*, 129 F.3d 281, 286 (2d Cir. 1997), which *supports* the Commission's position that weight falling outside the normal range is itself an impairment without regard to an underlying physiological disorder.  The decision involved a plaintiff firefighter who exceeded the 188-pound weight limit of his collective bargaining agreement.   While the court noted that "[g]enerally, weight is not [a qualifying] impairment," the court went on to explain that "a cause of action may lie against an employer who discriminates against an employee on the basis of the perception that the employee is morbidly obese [citation omitted] *or* suffers from a weight condition that is the symptom of a physiological disorder…." *Francis*, 129 F.3d at 286 (citing *Cook, supra*, 10 F.3d at 25; 29 C.F.R. § 1630.2(h)) (emphasis added); *cf. Res. for Human Dev., supra*, 827 F. Supp. 2d at 692 (noting that the *Francis* court "observed that a cause of action may exist against an employer who discriminates against an employee based on a perception that the employee is morbidly obese").

2009) (For claim brought under Rehabilitation Act, plaintiff "is not required, at this early pleading stage, to go into particulars about the life activity affected by her alleged disability or detail the nature of her substantial limitations. Her complaint identifies an impairment, of which [defendant] allegedly was aware and alleges that such impairment constitutes a disability under the Rehabilitation Act.").

Defendant's reliance on *Lumar v. Monsanto Co.*, 395 F. Supp. 3d 762, 778−79 (E.D. La. 2019) is misplaced.  R. Doc. 9-1 at 11.  In *Lumar*, Judge Roby ruled, at the summary judgment stage, that plaintiff presented no evidence to contradict Defendant's contention that the obesity impairment did not substantially limit a major life activity.  395 F. Supp. 3d at 778-79.  The decision is inapposite because at the pleading stage, only a "short and plain statement" regarding the EEOC's claim is required.  The EEOC will support its claim with supporting evidence when required to do so for purposes of summary judgment or trial.

Further, the EEOC's complaint seeks relief on behalf of Mr. Avilas and a class of aggrieved individuals who were subject to adverse action by effect of the discriminatory policy.  R. Doc. 1 at p. 1 ("Nature of the Action"); p. 6 ("Statement of Claims") at ¶ 13.Q and ¶ 16; p. 11-12 ("Prayer for Relief") at ¶ C, F, and G.  When the EEOC files suit, it does so in its own name and not as a proxy for the person who filed the charge.  *Gen. Tel. Co. v. EEOC*, 446 U.S. 318, 324-326 (1980); *see also EEOC v. Waffle House, Inc*., 534 U.S. 279, 297-98 (2002) (the EEOC "does not stand in the employee's shoes" when it sues).  Accordingly, courts distinguish the level of factual specificity required to allege "disability" depending on whether the EEOC brings a suit on behalf of a single charging party or whether, in contrast, the EEOC brings a suit on behalf of a group of aggrieved individuals.  *See, e.g., EEOC v. UPS*, No. 09-cv-5291, 2013 U.S. Dist. LEXIS 4462, at *15-16 (N.D. Ill. Jan. 11, 2013) (distinguishing pleading requirements applicable to a single-

claimant case alleging disability discrimination).  When the EEOC files a suit on behalf of a class of aggrieved individuals, courts deem *Twombly/Iqbal* and Fed. R. Civ. P. 8 satisfied where the EEOC's complaint identifies: (1) the statutes that the employer allegedly violated; (2) the time frame in which the alleged violations occurred; (3) the names of at least one presently identified victim; (4) a general description of the class of aggrieved persons; (5) the specific claims alleged and their elements as to the charging party and the class of aggrieved persons; (6) the types of conduct to which the named claimants and the identified class members were subjected; and (7) the remedies being sought. *EEOC v. Geisinger Health*, No. 21-4294-KSM, 2025 U.S. Dist. LEXIS 56874, at *37 (E.D. Pa. Mar. 27, 2025) (citing *EEOC v. JBS USA, LLC*, 481 F. Supp. 3d 1204, 1216 (D. Colo. 2020)); *EEOC v. UPS*, No. 9-cv-5291, 2013 U.S. Dist. LEXIS 4462, 2013 WL 140604, at *6 (N.D. Ill. Jan. 11, 2013); *EEOC v. 5042 Holdings Ltd.*, No. 09-cv-61, 2010 U.S. Dist. LEXIS 8242, 2010 WL 148085, at *2 (N.D. W. Va. Jan. 11, 2010); *EEOC v. Il Fornaio (Am.) LLC*, No. 22-cv-05992, 2024 U.S. Dist. LEXIS 166961, 2024 WL 4003318, at *4 (C.D. Cal. Apr. 3, 2024)); *see also EEOC v. Bass Pro Outdoor World*, LLC, No. 4:11-CV-3425, 2013 U.S. Dist. LEXIS 36711, at *16 (S.D. Tex. Mar. 18, 2013) (with respect to failure to hire claim brought under Title VII, concluding that the EEOC's complaint "is missing vital information regarding whether Defendants were aware of a particular claimant's race, whether a position was available when claimant applied, and whether a similarly situated individual was hired in lieu of the named claimant… However, this is precisely the type of information that Plaintiff is likely to obtain through discovery, and the Court finds that Plaintiff has adequately put Defendants on notice regarding the nature of the EEOC's claims.").

The EEOC's complaint satisfies these requirements.  It therefore provides the "short and plain statement of the claim showing that the [EEOC] is entitled to relief," Fed. R. Civ. P. 8(a)(2),

and Defendant thus has "fair notice of what the . . . claim is and the grounds upon which it rests."

*Twombly*, 550 U.S. at 555.  Such notice is sufficient to "unlock the doors" to discovery.  *Iqbal*,

556 U.S. at 678.

### III.    If the Court Were to Determine that the Complaint Fails to State a Claim under 12(b)(6), the Appropriate Remedy is Dismissal without Prejudice and with Leave to Amend.

Notwithstanding the foregoing, if the Court were to determine that the complaint is

deficient for failure to state a claim, then the appropriate remedy would be dismissal without

prejudice and with leave to amend the complaint.

As this Court has observed:

> The court should freely give leave [to amend a complaint] when justice so requires." Fed. R. Civ. P. 15(a)(2). "Granting leave to amend is especially appropriate, in cases such as this, when the trial court has dismissed the complaint for failure to state a claim. *Griggs v. Hinds Junior Coll.*, 563 F.2d 179, 180 (5th Cir. 1977). Plaintiff has not previously been afforded the opportunity to amend his complaint, and the Court cannot hold on the record before it at this stage that any amendment Plaintiff might make would be futile. *See Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 566 (5th Cir. 2003) (noting a court need not grant leave to amend if the proposed amendment would be "futile," i.e., if the complaint so amended would still fail to survive Rule 12(b)(6) review).

*Steckel v. Occidental Fire & Cas. Co. of N.C.*, No. 2:23-cv-03747, 2024 U.S. Dist. LEXIS 104910,

at \*2-3 (E.D. La. June 12, 2024) (Guidry, J.).  As the Fifth Circuit cogently observed in *Dussouy*

*v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597-98 (5th Cir. 1981):

> In our review of the trial court's exercise of discretion, rule 15(a), of course, provides the starting point. **'Discretion' may be a misleading term, for rule 15(a) severely restricts the judge's freedom, directing that leave to amend 'shall be freely given when justice so requires'. It evinces a bias *in favor of granting leave to amend*. The policy of the federal rules is to permit liberal amendment to facilitate determination of claims on the merits and to prevent litigation from becoming a technical exercise in the fine points of pleading. Thus, unless there is a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial.**

(Emphasis added, internal citations omitted).

**CONCLUSION**

This Court has resoundingly rejected Defendant's incorrect assertion that Class III obesity requires an underlying physiological cause. Moreover, the EEOC may yet prove an underlying physiological cause, if that were pertinent. Further, because the EEOC has also alleged "regarded as" liability, it is possible Defendant may alternatively be subject to liability under the ADA if it took adverse actions because of a real or perceived impairment. The well pleaded facts, taken as true under Rule 12(b)(6), establish this.

Similarly, Defendant's motion fails because it relies on the notion that the EEOC must identify in its Complaint specific major life activities to prevail. The EEOC has no such pleading requirement, as shown above. Further, discovery is expected to establish numerous major life activities in which Mr. Avilas and other class members were substantially limited. The EEOC's well pleaded facts have unlocked the door to discovery. In the same vein, discovery can reasonably be expected to reveal major life activities as to which Mr. Avilas and other class members have a record of substantial limitation. Therefore, the EEOC has well pleaded facts to support its claims under all three prongs of coverage — "actual" disability, "regarded as" disability, and "record of" disability.

For the foregoing reasons, the EEOC requests that the Court deny Defendant's motion to dismiss the complaint pursuant to Rule 12(b)(6), or, in the alternative, that the Court grant the EEOC leave to amend the complaint.

Respectfully submitted,

**Andrew B. Rogers**
Acting General Counsel
U.S. Equal Employment Opportunity
Commission
No Bar No. Assigned

**Christopher Lage**
Deputy General Counsel
U.S. Equal Employment Opportunity
Commission
No Bar No. Assigned
**Gwendolyn Young Reams**
Associate General Counsel
U.S. Equal Employment Opportunity
Commission
No Bar No. Assigned


**Rudy L. Sustaita**
Regional Attorney
U.S. Equal Employment Opportunity
Commission
Houston District Office
1919 Smith Street, 7th Floor
Houston, Texas 77002
Phone: (713) 651-4970
Fax: (713) 651-4995
Texas Bar No. 19523560

**Gregory T. Juge**
Assistant Regional Attorney
U.S. Equal Employment Opportunity
Commission
New Orleans Field Office
Hale Boggs Federal Building
500 Poydras Street, Suite 809
New Orleans, LA 70130
Phone: (504) 676-8239
Fax: (504) 595-2886
Louisiana Bar No. 20890

/s/ *Peter Theis*
**Peter Theis**
Trial Attorney
U.S. Equal Employment Opportunity
Commission
New Orleans Field Office
Hale Boggs Federal Building
500 Poydras Street, Suite 809
New Orleans, LA 70130
Phone: (504) 635-2548
peter.theis@eeoc.gov
Louisiana Bar No. 34786

**Elizabeth J. Owen**
Trial Attorney
U.S. Equal Employment Opportunity
Commission
New Orleans Field Office
Hale Boggs Federal Building
500 Poydras Street, Suite 809
New Orleans, LA 70130
Phone: (504) 635-2548
elizabeth.owens@eeoc.gov

**Jacqueline C. Barber**
Senior Trial Attorney
U.S. Equal Employment Opportunity
Commission
New Orleans Field Office
500 Poydras Street, Suite 809
New Orleans, LA 70130
Phone: 504.635.2572
Email: jacqueline.barber@eeoc.gov
Louisiana Bar No. 36362

**COUNSEL FOR U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION**